(64 App. Div. 525.)

TRUSTEES OF FREEHOLDERS AND COMMONALTY OF TOWN OF
SOUTHAMPTON v. JESSUP.

(Supreme Court, Special Term, Suffolk County. June Term, 1901.)

Action by the trustees of the freeholders and commonalty of the
town of Southampton against Nathan C. Jessup. Judgment for
plaintiff.

For order of the appellate division affirming the same, see 72 N.
Y. Supp. 312.

Thomas Young, for plaintiff.
Charles M. Stafford, for defendant.

SMITH, J. On June 2, 1888, the trustees of the town of South-
ampton passed a resolution which reads as follows:

"Resolved, that Nathan C. Jessup be, and is hereby, given liberty to make
a roadway and to erect a bridge across the Great South Bay, commencing
at the south point of Potunk Neck; thence running southerly to the beach;
the said bridge to be a drawbridge, of a width of not less than twenty feet,
the height above the meadow three feet, and the draw to be twenty feet
wide; and the said Nathan C. Jessup shall not cause any unnecessary delay
to those navigating the waters of said bay."

The bay at this point is between 300 and 400 feet wide. The chan-
nel or deep water, which is on the north side of the bay, is about
125 feet wide, and the shoal water covering the flats which extend
out from the south shore is about 200 feet wide. After the passage
of the resolution the defendant constructed a bridge composed of
pine and oak piles, covered with plank, across the entire width of the
bay. About six years afterward the defendant commenced the con-
struction of a solid roadway for a distance of 200 feet from the south
shore of the bay, excavating the earth from the bottom of the bay
on either side of the bridge, and throwing it toward the middle, under
and adjoining both sides of the bridge. The trustees served notice
on the defendant forbidding him to continue the work of constructing
the roadway, and commenced this action to enjoin such construction.
Upon the trial the court directed judgment for an injunction on the
ground that the resolution did not authorize the defendant to con-
struct a solid roadway over any portion of the bay. The appellate
division on appeal affirmed the judgment. 42 N. Y. Supp. 4. The
court of appeals on appeal reversed the judgment and granted a new
trial. 56 N. E. 538. The court of appeals held that the only evidence
in the case indicating the intention of the parties was found in the
terms of the resolution itself, and that under the terms of the resolu-
tion the defendant had the right to build any reasonable and ordinary
roadway such as an embankment of earth, but held that it was open
to question whether the defendant had the right to excavate upon the
plaintiff's land to procure the materials for that purpose. The court
says that the resolution does not specify of what materials either the
bridge or roadway should be built, and, as I interpret the opinion of
the court, it is permissible upon the new trial to take evidence in
addition to the terms of the resolution to determine the intention of

the parties.   If the resolution had given the defendant the right and permission to build a road bridge across the bay, there could be no question that he would have no right to make a solid roadway over any part of the bay.   If it had stated in terms that he could build a bridge and a solid roadway which together would extend across the bay, his right to build a solid roadway over some portion of the bay would be unquestionable.   Upon the whole evidence given upon the retrial of the case, I am convinced that it was the intention of the parties that the defendant should have permission to build a road bridge across the bay, and that he has no right to build a solid roadway in any part of the bay between the north and south shores, for these reasons :

1.   There is nothing in the resolution to indicate how far a roadway should extend, and the defendant himself says that nothing was said by him to the trustees, or by the trustees to him, as to how far north the roadway was to extend.   The trustees were men of intelligence, of good business ability and common sense; and it is not reasonable to believe that, if they intended to give the defendant the right to make a solid roadway in any part of the bay, nothing was said, either in the resolution or in the discussions preliminary thereto, as to how far the roadway should extend.

2.   The testimony of Charles Halsey, Warren Corwin, Albert J. Post, and John Quinn, four of the trustees who voted for the resolution, is clear and explicit that it was plainly understood that the bridge was to extend from shore to shore.   Quinn testifies that the permission was given to the defendant on the condition that it be built on piles, and that he accepted it on that condition.   Corwin testifies that Jessup wanted to build a solid roadway on the south shore, but that the trustees would not agree to it.   Halsey testifies that it was stated that the bridge was to be built upon piles from the meadow to the beach.   Post testifies that the understanding was that the bridge should be built so that navigation would not be obstructed from shore to shore.   These witnesses are men worthy of belief, they have no personal interest in the result, and I think their testimony should be believed in preference to the uncorroborated denial of the defendant.

3.   What is perhaps quite as significant as any circumstance in the case, the defendant did actually build a bridge on piles from shore to shore immediately after the passage of the resolution, and after the bridge was completed he invited the trustees to inspect it, and they went and looked at it.   John Quinn gives this account of the inspection:

"Q. Now, after you looked it over, what, if anything, did the trustees say to Jessup in regard to it?   A. We told him that it was all right,—done just as we expected him to do it, and just in accordance with the way we wanted it done,—and he said, 'I told you I could do it right.' "

Mr. Albert J. Post gives this account of the inspection:

"The trustees seemed to be satisfied with the work that Mr. Jessup did there.   Q. Did they say that to him?   A. Yes, sir;  *  *  *  with the bridge and the draw, everything was satisfactory; the bridge was built according to the permission given him.   They told him that—   Q. What did he say

to that? A. He seemed to be as much pleased as the trustees were; that he was satisfied. Expressed himself that way."

This testimony is entirely uncontradicted by the defendant. It is inconsistent with the theory that the trustees or the defendant at that time had any idea that the resolution gave him permission to build a roadway or bridge different from that he had already constructed. To break the force of this evidence, in part, at least, it is urged that that portion of the bridge over the flats was a temporary structure; but it now satisfactorily appears, by the testimony of an expert bridge builder, that the south portion of the bridge is constructed of materials as permanent in character as the north portion.

Finally. It is improbable, considering all the circumstances, that the trustees would seriously entertain the proposition to permit the obstruction of the free passage of the water in any portion of the space to be covered by this bridge. The evidence clearly shows the great importance to the residents of the territory immediately east of the bridge that there should be no obstruction of the water at this point. In the future development of the bay it may be of supreme importance that not merely the present status of affairs be maintained, but that the passageway be further deepened. The privilege of making a solid roadway is of no economical value to the defendant. A bridge on piles answers every reasonable requirement. A permanent obstruction across this bay at this point for the greater portion of its width would be an exercise of power on the part of the trustees so unnecessary to the grantee of the franchise, and so serious in its present and future consequences to the people of the town, as to raise a strong presumption that no such franchise was intended to be granted.

The plaintiff is entitled to an injunction as demanded in the complaint. I do not consider the question of damages a serious one, and upon the testimony I cannot fairly estimate an amount to which the plaintiff would be fairly entitled, so that the judgment must be limited to the injunction demanded by the plaintiff, with costs.